UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS JACKSON,

                                        Plaintiff,

        v.                                                          9:20-CV-1092
                                                                    (BKS/ATB)


CAPTAIN BERTONE, et al.,

                                        Defendants.
_____

APPEARANCES:

THOMAS JACKSON
Plaintiff, Pro Se
12-A-3039
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929


BRENDA K. SANNES
United States District Judge

## DECISION AND ORDER

## I.        INTRODUCTION

        The Clerk has sent to the Court for review a complaint submitted by pro se plaintiff

Thomas Jackson asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983").  *See* Dkt.

No. 2 ("Compl.").  Plaintiff, who is incarcerated at Clinton Correctional Facility, is proceeding

in forma pauperis.[1]

_____

        [1]  Plaintiff's complaint was originally filed in the Southern District of New York, together with an
application to proceed in forma pauperis and a motion for a temporary restraining order and preliminary
injunction.  *See* Compl.; Dkt. No. 1 ("IFP Application"); Dkt. No. 3 ("Motion for Injunctive Relief").  By Order

## II.    SUFFICIENCY OF THE COMPLAINT

### A.    Governing Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[2]  Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis.  *See id*.

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners

_____

entered on August 27, 2020, the Honorable Colleen McMahon granted plaintiff's IFP Application.  Dkt. No. 7.  Thereafter, the case was reassigned to the Honorable Cathy Seibel of the Southern District of New York.  By Order entered on September 4, 2020, Judge Seibel severed plaintiff's claims arising at Sing Sing Correctional Facility from his claims arising at Shawangunk, Mid-State, Southport, and Clinton Correctional Facilities, ordered that plaintiff's claims arising at Shawangunk, Mid-State, Southport, and Clinton Correctional Facilities be transferred to the Northern District of New York, and denied the Motion for Injunctive Relief without prejudice.  *See* Dkt. No. 9 ("September 2020 Order").  On September 14, 2020, plaintiff's case was transferred in part to this District from the Southern District of New York.  Dkt. No. 11.

   [2]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).  Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678

3

(citing *Twombly*, 550 U.S. at 555).  Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id.* (internal quotation marks and alterations omitted).

### B.   Summary of the Complaint

Plaintiff asserts allegations of wrongdoing that occurred while he was incarcerated at Shawangunk, Southport, Mid-State, and Clinton Correctional Facilities.  *See generally* Compl.  The following facts are set forth as alleged by plaintiff in his complaint, or stated in his declaration in support of his Motion for Injunctive Relief.  Dkt. No. 5 ("Supporting Declaration").[3]

### 1.   Wrongdoing at Shawangunk Correctional Facility

At approximately 10:00 p.m. on September 17, 2017, plaintiff arrived at Shawangunk Correctional Facility ("Shawangunk C.F.") from Sing Sing Correctional Facility ("Sing Sing C.F.").  Compl. at 9.  Upon arriving at the facility, plaintiff was examined by a nurse during "intake[.]"  *Id.*  Plaintiff advised the nurse that he was assaulted by corrections officers at Sing Sing C.F. earlier in the day.  *Id.*

As a result of a misbehavior report issued by officers from Sing Sing C.F., plaintiff was transferred to "the box" following his intake evaluation.  Compl. at 9.

On the morning of September 19, 2017, plaintiff was "sent to the infirmary on a strecher [sic] because of [his] pain" and inability to move.  Compl. at 9.  When plaintiff

---

[3]  Plaintiff's Supporting Declaration, which is sworn to under penalty of perjury, contains a limited number of statements that are not included in the complaint.  Because plaintiff is proceeding pro se and these statements are not inconsistent with the allegations in the complaint, the Court has considered them in connection with its sufficiency review herein.

arrived at the infirmary, he was evaluated by defendant Doctor Lee, who prescribed him "a walker and pain medication." *Id.* On three unidentified occasions thereafter, plaintiff was administered an enema, and separately forced to consume "a powder substance everyday[ ] so he could use the bathroom[.]" *Id.* at 9-10.

On an unidentified date, plaintiff "wrote to sick call and filed a grievance complaining about back and leg pain[,]" and requested a magnetic resonance imaging ("MRI") scan. Compl. at 10. Thereafter, plaintiff "was giv[en] an x-ray, which came back negative." *Id.*

At some point, plaintiff was "interviewed" in the infirmary by defendant Corrections Lieutenant Connors regarding the grievance he filed against officials from Sing Sing C.F. Compl. at 10. Defendant Connors "tried to hender [sic] plaintiff's investigation about the assault[.]" *Id.* Plaintiff filed a grievance about defendant Connors's "misinformation about the assault." *Id*. at 11.

On October 10, 2017, plaintiff was issued a misbehavior report charging him with "violent conduct, assault on inmate and assault on staff, fighting, property damage, and refusing [a] direct order." Compl. at 11. Plaintiff received a disciplinary hearing for the charges in the misbehavior report, which was conducted by defendant Hearing Officer Polizzi. *Id*.

During the disciplinary hearing, plaintiff plead not guilty to the charges and "submitted into evidence . . . the Go Around Sheet, which . . . supported [his] defense of retaliation." Compl. at 11. Plaintiff also requested "the facility operation [manual]" for "the Go Around Sheet" to show that "policies and procedures" make clear that "all go arounds are final and that the officers only take one go around for the AM." *Id.* Defendant Polizzi denied plaintiff's

5

request for this document.  *Id.*

At the conclusion of the hearing, defendant Polizzi found plaintiff "guilty on all charges" despite plaintiff's introduction of "exculpatory evidence" showing "he was set up" by two officials from Sing Sing C.F.  Compl. at 11.  Plaintiff appealed the disciplinary determination to the Superintendent of Shawangunk C.F., defendant Lamanna, who "affirmed Plaintiff's charges."  *Id*. at 12.  Plaintiff then appealed defendant Lamanna's decision to the Director of Special Housing, defendant D. Venettozzi, who also "affirmed the charges."  *Id.*

On October 31, 2017, plaintiff was transported to an outside hospital for an "EMG[.]" Compl. at 10.  "The results came back negative."  *Id.*

Thereafter, plaintiff "complained through sick call and wrote another grievance" regarding pain in his leg, where "a huge lump had developed[.]"  Compl. at 10.  Following plaintiff's complaint, he "was examined and giv[en] a medical shower pass because of the lump and back pain."  *Id.*  "Plaintiff filed a grievance on [defendant] Doctor Lee because he did not put plaintiff in for a[n] MRI and physical therapy."  *Id.*

On an unidentified date, plaintiff's wife visited him at the facility.  Compl. at 12.  Before plaintiff was transported to the visiting room to see his wife, defendant Corrections Captain Bertone approached him in the infirmary and stated, "you like grieving my staff, you will not be provided with your walker."  *Id.*  Following this exchange, plaintiff walked to the visiting room "in great pain[.]"  *Id.*

### 2.  Wrongdoing at Southport Correctional Facility

On January 10, 2018, plaintiff was transferred to Southport Correctional Facility

6

("Southport C.F.").  Compl. at 12.[4]  When plaintiff arrived at the facility, he "was still in a lot of pain[.]"  *Id.*  Plaintiff spoke to the intake nurse, defendant Jane Doe (hereinafter, "Southport Nurse Jane Doe"), "about his medical condition."  *Id.*  Plaintiff advised Southport Nurse Jane Doe that he was "beat and set up by officers at Sing Sing Corr[ectional] Fac[ility]" and "supposed to see a doctor for a follow up" appointment.  *Id.*  Plaintiff further stated that his "medical file" shows that he "has a flats and shower medical pass[,]" and showed Southport Nurse Jane Doe the "lump protruding out of his left uper [sic] thigh."  *Id.*

Southport Nurse Jane Doe documented plaintiff's injuries.  Compl. at 13.  Thereafter, plaintiff was "forced to walk up 2 flights of stairs and . . . take regular showers, . . . despite [his] medical documents."  *Id.*

"Plaintiff filed a grievance about not receiving medical showers and being [housed] on the second floor, and . . . requested a[n] MRI because of [his] pain."  Compl. at 13.  Thereafter, plaintiff was transferred to Five Points Correctional Facility because "he was suicidal" as a result of "the pain in his leg and back."  *Id.*

At some point, plaintiff was transferred back to Southport C.F.  Compl. at 15.  Plaintiff continued to experience a "lack of medical care."  *Id.*

### 3.  Wrongdoing at Mid-State Correctional Facility

On an unidentified date in 2018, plaintiff was transferred to Mid-State Correctional Facility ("Mid-State C.F.").  Compl. at 14-15.  Upon arriving at Mid-State C.F., plaintiff "informed the intake nurse of his medical problems."  *Id.* at 14.  Thereafter, plaintiff "filed a

---

[4]  Southport C.F. is located in Chemung County, which is in the Western District of New York.  *See* 28 U.S.C. § 112(d).

sick call slip about the lump in his left uper [sic] thigh and lower back pain."  *Id.*  "Plaintiff was seen by 3 different nurses who documented [his] lump and pain."  *Id.*

At some point, plaintiff was evaluated by defendant Nurse Ferguson, who "lied and said she took [him] out for a physical examination."  Compl. at 14.  Defendant Ferguson "tried to prevent plaintiff from geting [sic] proper medical."  *Id.*  "Plaintiff filed a grievance about lack of treatment, which was a continuation."  *Id.*

At some point, plaintiff "became suicidal because of the pain, and was sent to mental health for about ten days."  Compl. at 14.  Plaintiff "told mental health [officials] that he was in great pain" as a result of being assaulted at Sing Sing C.F., which these officials "documented[.]"  *Id.* at 15.  Thereafter, plaintiff continued to file grievances regarding his medical condition.  *Id.*

On July 31, 2018, plaintiff was seen by defendant Doctor Monnava.  Compl. at 15.  Plaintiff informed Doctor Monnava about his level of pain and injuries from the assault he experienced.  *Id.*  Plaintiff requested an MRI for his leg and back, as well as "a medical shower pass and a handicap cell[ ] because plaintiff fell in a shower that was not a handicap shower."  *Id.*  Doctor Monnava examined the lump on plaintiff's thigh and scheduled him for an MRI, but did not prescribe him physical therapy or grant his request for a medical shower pass or a "handicap cell[.]"  *Id.* at 15-16, 19.

On September 5, 2018, a medical professional performed an MRI scan of plaintiff's thigh.  Compl. at 15.  The scan revealed "a secondary tear and enternal [sic] bleeding."  *See* Supporting Declaration at 1.  "Plaintiff did not receive a[n] MRI for his back."  Compl. at 16.

Although "[p]laintiff's MRI results came back positive, . . . plaintiff still did not receive

physical therapy [or] a handicap cell."  Compl. at 16.  "Plaintiff grieved that he was not receiving the proper medical care and that he was in pain."  *Id.*

### 4. Wrongdoing at Clinton Correctional Facility

On March 5, 2019, plaintiff was transferred to Clinton Correctional Facility ("Clinton C.F.").  Compl. at 16.  "Plaintiff filed many sick call slips and was seen by the nurse."  *Id.*  At some point, plaintiff was examined by defendant Doctor D'Amico.  *Id.*  Thereafter, plaintiff "was given physical therapy for a month."  *Id.*  However, plaintiff was denied a medical shower pass and a medical flats pass.  *Id.*

At some point, "[p]laintiff wrote another grievance about . . . pain in his left uper [sic] thigh and back[,]" and requested "another MRI for his left leg and a[n] MRI for his back."  Compl. at 16.  Thereafter, plaintiff "was taken for a [second] MRI for his uper [sic] left thigh, which came back positive for the same injuries."  *Id.*  "Plaintiff filed a grievance about not seeing a specialist and not receiving a[n] MRI for his back."  *Id.*

Plaintiff has difficulty walking "normally" and his left leg at times "goes numb" and lacks "the full range of motion" he had before he was assaulted.  *See* Supporting Declaration at 2.  Plaintiff also continues to experience "sharp pains" in his back, which "travel down the right side of [his] body[.]"  *Id.*

### 5. Plaintiff's Claims Before This Court

Liberally construed, the complaint asserts the following claims against the aforementioned defendants in their individual and official capacities: (1) a First Amendment retaliation claim against defendant Bertone; (2) Eighth Amendment medical indifference claims against defendants Lee, Bertone, Southport Nurse Jane Doe, Ferguson, Monnava,

and D'Amico; (3) a Fourteenth Amendment due process claim against defendant Connors

based on his inadequate investigation; and (4) Fourteenth Amendment disciplinary due

process claims against defendants Polizzi, Lamanna, and Venettozzi.

Plaintiff seeks money damages and injunctive relief.  Compl. at 20.  For a complete

statement of plaintiff's claims, reference is made to the complaint.

### C.      Claim Arising in the Western District of New York

The relevant venue provision for a Section 1983 action is 28 U.S.C. § 1391(b), which

provides as follows:

> A civil action may brought in – (1) a judicial district in which any
> defendant resides, if all defendants are residents of the State in
> which the district is located; (2) a judicial district in which a
> substantial part of the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is the subject of the
> action is situated; or (3) if there is no district in which an action
> may otherwise be brought as provided in this section, any judicial
> district in which any defendant is subject to the court's personal
> jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Rule 21 of the Federal Rules of Civil Procedure permits the Court to sever any claim

against a party and proceed with that claim separately.  Fed. R. Civ. P. 21.  In deciding

whether to sever a claim, the Court should consider the following: (1) whether the claims

arise out of the same transaction or occurrence; (2) whether the claims present some

common questions of law or fact; (3) whether settlement of the claims or judicial economy

would be facilitated; (4) whether prejudice would be avoided if severance were granted; and

(5) whether different witnesses and documentary proof are required for the separate claims.

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999).

"A claim may be severed based upon lack of a significant relationship between defendants or solely for the purpose of facilitating transfer."  *Cain v. New York State Bd. of Elections*, 630 F. Supp. 221, 225 (E.D.N.Y. 1986).  "Where the administration of justice would be materially advanced by severance and transfer, a court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against other defendants."  *Id.* at 225-26.

"A decision to sever lies within the discretion of the Court."  *Cain*, 630 F. Supp. at 225. The plaintiff's choice of forum, however, should be accorded substantial weight.  *Murray v. British Broadcasting Corp*., 81 F.3d 287, 290 (2d Cir. 1996) ("There is ordinarily a strong presumption in favor of the plaintiff's choice of forum[.]" (citations omitted)).

Here, while plaintiff's claim related to alleged wrongdoing that occurred while he was confined at Southport C.F. arose in the Western District of New York, the factors weigh in favor of the Northern District of New York retaining jurisdiction over this claim.  More specifically, although this action involves claims related to the denial of medical care at different facilities, with different defendants, all of plaintiff's medical indifference claims arise from the same medical condition(s) and alleged inadequacies in treatment.  Thus, at this juncture, the interests of justice and efficiency are best served by this Court retaining jurisdiction over plaintiff's medical indifference claim based on events at Southport C.F.  *See Randle v. Alexander*, 960 F. Supp. 2d 457, 486 (S.D.N.Y. 2013) (denying motion to transfer venue of interrelated medical care claims); *see also Mandala v. Coughlin*, 920 F. Supp. 342, 356 (E.D.N.Y. 1996) ("Given the related nature of the plaintiff's complaints against both sets of defendants, the Court sees no reason to waste judicial resources by trying two similar

11

cases separately, before two courts.").

**D.    Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

**1.   Official Capacity Claims**

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.");  *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).  Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, No. 5:93-CV-1298 (RSP/GJD), 1996 WL

156764 at *2 (N.D.N.Y. 1996).

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.")

Accordingly, to the extent that plaintiff seeks monetary damages under Section 1983 against any defendant in his or her official capacity, such claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment.[5]

### 2. Retaliation Claim

Courts must approach claims of retaliation "'with skepticism and particular care'

---

[5] In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.  Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective."  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities).

because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "A prisoner's filing of a grievance against a corrections officer is protected by the First Amendment." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (citing cases).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's retaliation claim against defendant Bertone survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### 3. Medical Indifference Claims

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976). The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton

14

infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id*.; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing, *inter alia, Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104).  "The standard of deliberate indifference includes both subjective and objective components." *Id*.

"First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted).  "Determining whether a deprivation is an objectively serious deprivation entails two inquiries[:] [1] . . . whether the prisoner was actually deprived of adequate medical care[; and 2] . . . whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (citations omitted).

The first inquiry requires examining "whether the prisoner was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279.  Prison officials who act "reasonably" in response to an inmate's health risk will not be found liable because the official's duty is only to provide "reasonable care." *Id*. at 279-80 (citing *Farmer*, 511 U.S. at 844-47).

The second inquiry under the objective component of the claim is whether the purported inadequacy in the medical care is "sufficiently serious." *Salahuddin*, 467 F.3d at 280.  If the "unreasonable care" consists of a failure to provide any treatment, then the court

15

must examine whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)).  A condition is "sufficiently serious" in objective terms if it presents "a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

"Where a plaintiff alleges that inadequate care was provided—instead of alleging a failure to provide any treatment—the inquiry focuses on 'the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract.'" *Revels v. Corr. Med. Care, Inc.*, No. 9:17-CV-0088 (MAD/TWD), 2018 WL 1578157, at *4 (N.D.N.Y. Mar. 28, 2018) (quoting *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003)); *Salahuddin*, 467 F.3d at 280 (noting that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability (citation omitted)).

With respect to the subjective component of a medical indifference claim, a plaintiff must show that the defendant "act[ed] with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by

16

'wantonness.'").  An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.  Similarly, "mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703.

### (a)  Defendant Lee

The complaint alleges that defendant Lee violated plaintiff's Eighth Amendment rights by failing to "put plaintiff in for a[n] MRI and physical therapy."  Compl. at 10.

Even assuming plaintiff was suffering from a serious medical condition during his confinement at Shawangunk C.F., by his own allegations, he was evaluated by defendant Lee less than two days after he arrived at the facility, and the evaluation resulted in him receiving a prescription for "a walker and pain medication."  Compl. at 9.  In addition, in response to plaintiff's subsequent complaints about "back and leg pain[,]" he received an x-ray, was thereafter transported to an outside hospital for an "EMG[,]" and, although both results were "negative[,]" he was issued a medical shower pass following another examination.  *See* Compl. at 9-10.

While plaintiff desired additional treatment, the Court has no basis to plausibly infer that plaintiff faced a risk of serious harm by not receiving an MRI and physical therapy.  The complaint does not allege, for example, that plaintiff's condition worsened after he was prescribed pain medication and a walker, or that he remained unable to perform day-to-day functions despite this treatment.  Thus, the Court is unable to plausibly infer that defendant Lee's alleged denial of plaintiff's request for an MRI and physical therapy was "sufficiently serious."

Furthermore, the complaint is devoid of any allegations which plausibly suggest that plaintiff's condition did not improve despite pain medication, use of a walker, and a medical shower pass, which defendant Lee knew, and yet refused to provide further treatment.  In addition, the complaint lacks any allegations regarding statements made by defendant Lee about plaintiff's medical condition, or his desire for an MRI and physical therapy, which may suggest deliberate indifference.  Thus, at most, the allegations in the complaint suggest a disagreement with defendant Lee's course of treatment, which is insufficient to satisfy the subjective element of plaintiff's claim.  *See Washington v. Westchester Cty. Dep't of Corr.*, No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference."); *Martin v. Niagara County Jail*, No. 05-CV-868, 2012 WL 3230435, at *10 (W.D.N.Y. Aug. 6, 2012) ("Plaintiff's demand for narcotic pain medications and defendants' unwillingness to prescribe them does not create an Eighth Amendment claim."); *Nelson v. Rodas*, No. 01-CV-7887, 2002 WL 31075804, at *15 (S.D.N.Y. Sept. 17, 2002) (complaint that doctors refused prisoner's request for a consultation with an outside physician was not a sufficient basis for an Eighth Amendment claim); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a [§] 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.").

Accordingly, plaintiff's medical indifference claim against defendant Lee is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### (b) Defendant Bertone

Non-medical personnel may be held liable for deliberate indifference to medical needs where a plaintiff demonstrates that the prison personnel intentionally denied or delayed access to medical care or intentionally interfered with medical treatment once it was prescribed. *See Banks v. No. 8932 Corr. Officer*, No. 11-CV-8359, 2013 WL 673883, at *4 (S.D.N.Y. Feb. 25, 2013) ("A prison guard's deliberate indifference to a serious medical need of a prisoner means intentionally denying or delaying access to medical care or intentionally interfering with medical treatment once it was prescribed."); *see also Estelle*, 429 U.S. at 104-05 (1976) (noting that deliberate indifference may be manifested when prison guards intentionally deny or delay access to medical care).

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's medical indifference claim against defendant Bertone survives sua sponte review and requires a response.  In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### (c) Defendant Southport Nurse Jane Doe

The complaint alleges that Southport Nurse Jane Doe violated plaintiff's Eighth Amendment rights when she refused his request for medical shower and flats passes and an MRI during intake.  Compl. at 12-13, 18.

19

Even assuming plaintiff was suffering from a sufficiently serious medical condition when he was evaluated by Southport Nurse Jane Doe during intake, the complaint does not contain any allegations which plausibly suggest that an intake nurse has the authority to issue a medical pass and schedule an inmate for an MRI.  In addition, the complaint does not allege that Southport Nurse Jane Doe took steps to prevent plaintiff from seeking such medical accommodations following intake.

Furthermore, even if the Court were to assume that an intake nurse has the authority to issue a medical pass and schedule an inmate for an MRI, the complaint does not allege that plaintiff was suffering from any visibly apparent physical complications at the time of his arrival to Southport C.F.  Nor does the complaint include any details regarding what statements, if any, plaintiff made to Southport Nurse Jane Doe about physical complications he would suffer in the absence of the medical accommodations he sought, or what statements, if any, Southport Nurse Jane Doe made to plaintiff regarding his requests for medical accommodations.  Thus, the Court has no basis to plausibly infer that Southport Nurse Jane Doe was aware that, in the absence of granting plaintiff the medical accommodations he sought, he would experience severe physical complications or a worsening condition, and nonetheless denied his requests.

In short, plaintiff has failed to adequately plead that defendant Southport Nurse Jane Doe acted with a sufficiently culpable state of mind in denying plaintiff's requests for certain medical accommodations during intake.  Accordingly, plaintiff's medical indifference claim against defendant Southport Nurse Jane Doe is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be

20

granted.

### (d)  Defendant Ferguson

The complaint alleges that defendant Nurse Ferguson violated plaintiff's Eighth Amendment rights when she visited him for an evaluation on an unidentified date and "lied and said she took [him] out for a physical examination" in an effort to "prevent plaintiff from geting [sic] proper medical."  Compl. at 14.

Plaintiff's allegations against defendant Ferguson are entirely conclusory.  Plaintiff does not allege, for example, when or why defendant Ferguson visited him, what statements, if any, she made to plaintiff or he made to her regarding his condition, or what treatment, if any, she provided or refused to provide.  Nor does plaintiff explain how defendant Ferguson prevented him from obtaining further treatment.  Furthermore, it is unclear when, in relation to plaintiff's encounter with defendant Ferguson, he was previously and subsequently evaluated by a medical professional.  Thus, the Court has no basis to plausibly infer that defendant Ferguson even rendered inadequate care, let alone that she did so out of deliberate indifference to plaintiff's serious medical needs.

Accordingly, plaintiff's medical indifference claim against defendant Ferguson is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### (e)  Defendant Monnava

The complaint alleges that Doctor Monnava violated plaintiff's Eighth Amendment rights by not scheduling him for an MRI on his back or prescribing him physical therapy or medical and flats passes either at the conclusion of his examination on July 31, 2018, or

21

following the results of his MRI, which revealed "a secondary tear and enternal [sic] bleeding." *See* Supporting Declaration at 1; Compl. at 15-16.

Even assuming plaintiff was suffering from a serious medical condition when he was evaluated by defendant Monnava, the complaint does not contain any allegations regarding how plaintiff's injuries impacted his daily life at that time.  Moreover, the complaint lacks any details regarding what statements, if any, plaintiff made to defendant Monnava about complications he experienced due to not having the medical accommodations he sought, or what statements, if any, defendant Monnava made to plaintiff regarding his requests or medical condition.  Thus, the Court has no basis to plausibly infer that defendant Monnava refused plaintiff the additional treatment that he desired at the conclusion of his examination despite knowing that doing so presented an excessive risk to his health or safety.

In addition, insofar as plaintiff's Eighth Amendment claim against defendant Monnava is based on a lack of treatment following the results of his MRI, the complaint does not allege any facts which plausibly suggest that plaintiff sought further treatment from defendant Monnava, which defendant Monnava refused to provide.  Instead, the complaint alleges only that plaintiff filed a grievance after receiving the results of his MRI wherein he "grieved that he was not receiving the proper medical care and that he was in pain." Compl. at 16.  Such allegations are entirely conclusory, and insufficient to plausibly suggest that plaintiff was denied further medical treatment, let alone denied further treatment by defendant Monnava despite this official knowing that plaintiff's medical condition presented an excessive risk to his health or safety.

In short, plaintiff has failed to adequately plead that defendant Monnava acted with a

22

sufficiently culpable state of mind in denying plaintiff's requests for certain medical

accommodations.  Accordingly, plaintiff's medical indifference claim against defendant

Monnava is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for

failure to state a claim upon which relief may be granted.

### (f)  Defendant D'Amico

Plaintiff alleges that defendant D'Amico violated his Eighth Amendment rights by not

sending him to a specialist, ordering an MRI on his back, and prescribing him medical

shower and flats passes following his completion of a month of physical therapy and receipt

of a second MRI, which showed "the same injuries" to his upper left thigh.  Compl. at 16, 19.

As an initial matter, plaintiff does not allege any facts which plausibly suggest that his

second MRI showed that the injury to his leg had not improved since his previous MRI.  Nor

does plaintiff allege any facts which plausibly suggest that the condition of his back

worsened during or after his month of physical therapy, and/or that he could not continue to

improve his condition through exercises taught to him during physical therapy.  Thus, the

Court is unable to plausibly infer that defendant D'Amico's alleged denial of plaintiff's

requests for an evaluation by a specialist, an MRI on his back, and medical shower and flats

passes were "sufficiently serious."

In addition, even assuming the allegations in the complaint are sufficient to satisfy the

objective component of plaintiff's claim, plaintiff does not explain how (or when), if at all,

defendant D'Amico became aware of his desires for medical and flats passes, an MRI on his

back, and an evaluation by a specialist, or what response, if any, he received from defendant

D'Amico regarding his requests.  Nor does plaintiff allege any facts which plausibly suggest

that defendant D'Amico was aware that plaintiff desired these treatments because he continued to suffer from severe pain and/or a worsening physical condition, despite his receipt of physical therapy.[6]  Thus, the Court has no basis to plausibly infer that defendant D'Amico denied plaintiff certain treatment that he desired out of deliberate indifference to his serious medical needs.

Accordingly, plaintiff's medical indifference claim against defendant D'Amico is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[7]

### 4. Due Process Claim Based on Inadequate Investigate

The complaint alleges that defendant Connors "interviewed" plaintiff about a grievance he filed against officials from Sing Sing C.F., and attempted to cover up the truth through "misinformation[.]"  Compl. at 10-11.

Plaintiff's allegations regarding defendant Connors are entirely conclusory.  Indeed, it is entirely unclear how (or why) defendant Connors may have attempted to cover up any wrongdoing by officials at Sing Sing C.F.

In any event, the law is well-settled that inmates do not have a constitutional right to state grievance programs.  *See Shell v. Brzeniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and

---

[6]  Although the complaint alleges that plaintiff "filed a grievance about not seeing a specialist and not receiving a[n] MRI for his back" after he received a second MRI on his leg, Compl. at 16, it is entirely unclear who the grievance was filed against, what plaintiff stated in his grievance regarding his medical condition, or what response he received, if any.

[7]  Because plaintiff has failed to adequately plead a medical indifference claim against defendant D'Amico, and for the reasons set forth in the September 2020 Order, the Court declines to reconsider plaintiff's Motion for Injunctive Relief at this time.

consequently allegations that prison officials violated those procedures does [sic] not give rise to a cognizable § 1983 claim.").  Moreover, inmates do not have a due process right to an investigation requested through a grievance.  *See DeShaney v. Winnebego Soc. Servs*., 489 U.S. 189, 196 (1989) (The Due Process Clause "generally confers no affirmative right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *Pine v. Seally*, No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("To the extent that plaintiffs attempt to assert a separate constitutional claim of 'failure to investigate,' the law is . . . clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.") (citing *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases)); *Torres v. Mazzurca*, 246 F. Supp. 2d 334, 341-42 (S.D.N.Y. 2003) (Inmates do not have a due process right to a thorough investigation of grievances).  Thus, the alleged failure by defendant Connors to adequately investigate plaintiff's grievance and/or follow the grievance process does not give rise to a cognizable Section 1983 claim.  *See also McCloud v. Prack*, 55 F. Supp. 3d 478, 481-82 (W.D.N.Y. 2014) ("Plaintiff's allegations that Olles deliberately conducted an inadequate investigation for the purpose of covering up Griffin's alleged misconduct, and that he did so at the direction of defendant Shepanski, are likewise insufficient to make out a § 1983 claim against either of them." (citing *Barnes v. Fedele*, 760 F. Supp. 2d 296, 304-05 (W.D.N.Y. 2011) ("Plaintiff's conclusory allegation that Kerbein 'covered up' for Fedele by conducting a less than thorough investigation fails to state a claim against Kerbein"); *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 650 (W.D.N.Y. 2010) ("Plaintiff's conclusory allegation that Kikendall 'knew

that [plaintiff's] complaint was not investigated according to DOCS guidelines but . . . sustained the investigation to cover up the defendants actions' is insufficient to show any knowing violation by Kikendall of plaintiff's rights")).

Accordingly, plaintiff's due process claim against defendant Connors is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5. Disciplinary Due Process Claims

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). Due process generally requires that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The duration of the challenged confinement, while not determinative, is a significant factor under *Sandin*. The Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey v. Giltner*, 197

26

F.3d 578, 589-90 (2d Cir. 1999)).[8]  The "atypicality" inquiry under *Sandin* is normally a question of law.  *Colon*, 215 F.3d at 230-31; *Sealey*, 197 F.3d at 585.  In making that determination the Court must consider the specific circumstances of the confinement, including both the duration and the conditions thereof.  *Id.*

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination.  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, *inter alia*, *Wolff v. McDonnell*, 418 U.S. 539, 563- 67 (1974)).  The hearing officer's findings must be supported by "some" "reliable evidence."  *Id.* (citing, *inter alia*, *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

In this case, the complaint alleges that defendant Polizzi found plaintiff guilty of certain disciplinary charges at the conclusion of his disciplinary hearing, after refusing to obtain and admit into evidence "the facility operation [manual]" for "the Go Around Sheet[,]" which would have supported plaintiff's defense that "he was set up" by two officials from Sing Sing C.F., and issued a false misbehavior report.  Compl. at 11.

As an initial matter, the complaint does not contain any allegations regarding the disciplinary charges imposed by defendant Polizzi, or how long, if at all, plaintiff spent in

---

[8]  A New York state inmate confined in SHU is placed in a solitary confinement cell for 23 hours a day. The inmate may exercise in the yard for one hour each day; is limited to two showers a week; and may not work or attend programming.  *See Colon v. Howard*, 215 F.3d 227, 230 (2d Cir. 2000); N.Y. Comp. Codes R. & Regs., tit. 7, §§ 304.1-.14 (2008).  An inmate on "keeplock" is confined to his cell, room or housing unit and does not enjoy full participation in the normal prison routine.  *See Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); N.Y. Comp. Codes R. & Regs. tit. 7, § 251-1.6 (2008).

27

restrictive confinement as a result of defendant Polizzi's disciplinary determination.  Thus, the Court has no basis to plausibly infer that plaintiff suffered a deprivation of a liberty interest, thereby triggering the procedural safeguards of due process.  *See Scott v. Albury*, 156 F.3d 283, 287 (2d Cir. 1998) ("No right to due process is implicated in the prison context unless a liberty interest has been deprived, and we read *Sandin* to require that we look to actual punishment in making this determination."); *Gill v. Riddick*, No. 9:03-CV-1456 (NAM/RFT), 2005 WL 755745, at *15 (N.D.N.Y.  Mar. 31, 2005) ("[W]here no liberty interests are at stake, . . . the Court need not assess the adequacy of the process . . . received.").

Furthermore, the complaint is devoid of any allegations which plausibly suggest that plaintiff was denied due process during his disciplinary hearing.  Plaintiff does not allege, for example, that he was prevented from calling witnesses or introducing documentary evidence other than "the facility operation [manual]" for "the Go Around Sheet" during his hearing.  Nor does plaintiff explain how this document alone would have demonstrated that he was innocent of the disciplinary charges he faced.  *See Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d. Cir. 1999) ("[A] hearing officer does not violate due process by excluding irrelevant or unnecessary" evidence); *see also Amaker v. Coombe*, No. 96-CV-1622, 2002 WL 523388, *10 (S.D.N.Y. 2002) ("[A]n inmate's right to present documentary evidence in his defense does not entail an obligation on the part of prison officials to retrieve every document that an inmate requests for his case[,] [e]ven when documents are relevant and obtainable.").  In addition, the Court has no basis to plausibly infer from the allegations in the complaint that defendant Polizzi's finding of guilt was not supported by "some" "reliable evidence."

Accordingly, plaintiff's Fourteenth Amendment due process claims against defendants

Polizzi, Lamanna, and Venettozzi are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and

28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[9]

## III.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's Section 1983 claim for money damages against each

defendant in his or her official capacity is **DISMISSED with prejudice** pursuant to 28 U.S.

§ 1915(e)(2)(B) and U.S.C. § 1915A(b) as barred by the Eleventh Amendment;[10] and it is

further

**ORDERED** that the following claims **SURVIVE** sua sponte review and require a

response: (1) plaintiff's retaliation claim against defendant Bertone; and (2) plaintiff's medical

indifference claim against defendant Bertone; and it is further

**ORDERED** that all remaining claims are **DISMISSED without prejudice** pursuant to

---

[9]  Although plaintiff's due process claims are dismissed, it is worth noting, as Judge Seibel did in the September 2020 Order, that plaintiff has another pending action against defendants Polizzi, LaManna, and Venettozzi, among others, wherein he alleges that these officials violated his right to due process in connection with a disciplinary hearing that occurred at Shawangunk C.F. in October, 2017.  *See Jackson v. Polizzi*, 7:20-CV-3105 ("*Jackson I*"), Dkt. No. 2 (S.D.N.Y. filed Apr. 16, 2020).  It appears, as Judge Seibel observed in the September 2020 Order, that the allegations in the complaint in *Jackson I* refer to a different disciplinary hearing than the one at issue in this case.  However, should it become clear, through an amended pleading or otherwise, that the due process claims that plaintiff intended to assert herein arise out of the same disciplinary hearing as the due process claims in *Jackson I*, such claims may be dismissed as duplicative of the claims in *Jackson I*.  *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."); *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation.").

[10]  Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action.  *See Gomez*, 171 F.3d at 796.  However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011).  Because plaintiff's Section 1983 official capacity claims are barred by the Eleventh Amendment, it would be futile to grant plaintiff leave to amend to re-plead these claims.

28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[11] and it is further

**ORDERED** that the Clerk shall **TERMINATE** defendants Acevedo, Santiago, Santos, Brown, Bailey, Curry, Knight, Lee, Polizzi, Lamanna, Connors, Ferguson, Monnava, Venettozzi, D'Amico, and Southport Nurse Jane Doe from this action; and it is further

**ORDERED** that the Clerk shall issue a summons and forward it, along with a copy of the complaint, to the United States Marshal for service upon defendant Bertone.  The Clerk shall forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the complaint be filed by defendant Bertone, or his counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

---

[11]  Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint.  Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised.  Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.  Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.  In the event plaintiff chooses to file an amended complaint, he may renew his request for injunctive relief.  Plaintiff is advised, however, that any renewed request for injunctive relief must be supported by evidence, as opposed to mere allegations, showing that the alleged irreparable harm is imminent, and that a relationship exists between the injury claimed in the motion and the conduct giving rise to the surviving claim(s) in the amended complaint.  *See Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim); *McKenna v. Wright*, No. 01-CV-6571, 2002 WL 338375, *4 (S.D.N.Y. Mar. 4, 2002) ("[S]ince the movant must show that the alleged irreparable harm is imminent, and not remote or speculative, . . . a finding of irreparable harm [cannot be based] solely on past conduct . . . ."); *Phelan v. Hersh*, No. 9:10-CV-0011(GLS/RFT), 2010 WL 277064, at *6 (N.D.N.Y. Jan. 20, 2010) (noting that to establish irreparable harm "[i]n the context of medical care claims, a '[p]laintiff must therefore show that he has a medical condition which is likely to become significantly worse without some definite course of treatment.'" (quoting *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *1 (S.D.N.Y. June 27, 1994)); *Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Candelaria v. Baker*, No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) ("To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." (internal quotation marks and citations omitted)).

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk of the Court shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: October 29, 2020
        Syracuse, NY


Brenda K. Sannes
U.S. District Judge

31