UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

THOMAS JACKSON,
        Plaintiff,

V.

DOCTOR "JHON" LEE,
NURSE "JANE DOE,
NURSE A. FERGUSON,
DOCTOR V. MONNOVA,
DOCTOR RICHARD D'AMICO,
CAPTIN MICHAEL BERTONE,
COMMISSIONER HEARING OFFICER A. POLIZZI,
DIRECTIVE OF SPECIAL HOUSING D. VENETTOZZI,
        Defendant(s).

-----------------------------------------------------X

COMPLAINT

9:20-CV-1092
(BKS)(ATB)

JURY TRIAL DEMANDED

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JAN 27 2021
AT _____ O'CLOCK
John M. Domurad, Clerk - Syracuse

## PLAINTIFF'S FIRST AMENDED COMPLAINT

### INTRODUCTION

This is a civil right action filed by Thomas Jackson, for damages and injunctive reliefs under 42. U.S.C. Section 1983 alleging denial of medical care in violation of the Eigth Amendment to the U.S. Constitution, retaliation in violation of the First Amendment to the U.S. Constitution, and confinement in Segregation in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

### I). JURISDICTION & VENUE

1. This is a civil act authorized by 42 U.S.C Section 1983 to redress the deprivation, under color of state law, of right secured by the

Constitution of the United States, the courts has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The Northern District of New York is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

## 2). PLAINTIFFS

3. Plaintiff, Thomas Jackson, is and was at all times mentioned herein a prisoner of the State of New York in the custody of New York Department of Corrections. He is currently confined in Upstate Corr. Fac., P.O. Box 2000, Malone, NY. 13953.

## 3). DEFENDANTS

4. Defendant Doctor "Jhon" Lee was at all relevant times herein a Doctor at Shawangunk Corr. Fac. P.O. Box 700 Walkill New York 12589. Defendant at all time mentioned in this complaint held the rank of a Doctor.

5. Defendant Captin Micheal Bertone was at all relevant times herein a captin at Shawangunk Corr. Fac., P.O. Box 700 Walkill, New York 12589. Defendant at all time mentioned in this complaint held the rank of a Captin.

6. Defendant A. Polizzi was at all relevant times herein a commissioner hearing officer at Shawangunk Corr. Fac., P.O. Box 700 Walkill, New York 12589. As the commissioner hearing officer, Defendant A. Polizzi conducts superintendent disciplinary hearings.

7. Defendant A. Ferguson, was at all relevant times herein a nurse at Mid-State Corr. Fac., P.O. Box 2500, Marcy New York 13403. Defendant at all times mentioned in this complaint held the rank of a nurse.

8. Defendant Doctor V. Monnova was at all relevant times herein a doctor at Mid-State Corr. Fac., P.O. Box 2500, Marcy New York. Defendant at all times mentioned in this complaint held the rank of a Doctor.

9. Defendant D. Venettozzi was at all relevant times herein a director of special housing unit at the Harriman State Campus Building, 1220 Washington Avenue, Albany New York 12226-2050. Defendant D. Venettozzi is in charge of review of

Administrative appeals. Defendant at all times mentioned in this complaint held the rank of a special housing unit director.

10. Defendant Doctor Richard D'Amico was at all relevant times herein a Doctor at Clinton Corr. Fac. P.O. Box 2001 Dannemora, New York 12929. Defendant at all times mentioned in this complaint held the rank of a doctor.

## 4). FACTS

11. On June 29, 2017, plaintiff was set up with a fabricated misbehavior report of an alleged stabbing. A Sergeant by the name of Pagan wrote the report out of retaliation because plaintiff tried to file a couple of grievances about his medical problems.

12. The misbehavior report from June 29, 2017, was dismissed 79 day latter on 9/15/2017.

13. Plaintiff was released back into general population on keeplock status because of a pending tier 3 misbehavior report from 9/11/2017.

14. Plaintiff wrote another grievance and gave it to an unidentified officer. The grievance was about the prior retaliation from sergeant pagan.

15. The unidentified officer ripped the plaintiff's grievance in front of plaintiff's face to prevent the plaintiff from filing the grievance.

16. Plaintiff was taken out of his cell by officer Acevedo in B-Block and put in handcuffs behind his back at about 8:00 A.M., and 9/17/2017.

17. Officer Acevedo then stated to plaintiff "we will get you out of Sing Sing one way or another, because you like to write grievances."

18. Plaintiff was then escorted by C.O. Acevedo in front of 7 building.

19. There was about six officers and a sergeant waiting.

20. C.O. Acevedo held on to plaintiff's handcuffs from behind.

21. Officer Brown from A-block uppercutted plaintiff with a punch to the stomach, and plaintiff fell to the floor in great pain.

22. C.O Brown, C.O. Santiago, C.O. Santos and Acevedo started kicking and pounching, pushing and stomping plaintiff, while Sergeant Knight stood by and did nothing.

23. Plaintiff was then draged into an area of the facility hospital by the C.O.'s and beat for about ten minutes while still in handcuffs. Sergeant Knight stated "We got you, bet you will not try to file another grievance."

24. Plaintiff was brought in handcuffs to see a nurse who refused to take a statement and provide medical attention to the plaintiff.

25. Plaintiff complained to the nurse about back and leg pain.

26. The nurse only documented one cut around plaintiff rist, which was from the handcuffs, this was an attept to cover up.

27. Plaintiff was taken to the special housing unit by C.O. Pernairo and C.O. Moore. Plaintiff told the officers that he was set up and assaulted by officers while in handcuffs.

28. Plaintiff was in great pain and could not move, plaintiff started to vomit all over his cell floor.

29. Plaintiff was then taken back to medical in a wheel chair by officer moore.

30. The nurse gave plaintiff something for his throat so the acid does not burn plaintiff's throat from the vomit. Plaintiff continued to complain about the pain. The nurse refused to send plaintiff to the outside hospital.

31. Plaintiff was sent back to the special housing unit.

32. Plaintiff was sent back to medical, because he was in so much pain and was having breathing problems.

33. The nurse refused to give plaintiff medical attention again.

34. Plaintiff wrote a grievance while in the box on 9/17/2019 about the retaliation and physical assault by the officers and lack of medical treatment. Plaintiff gave his grievance to an unidentified officer while in the box.

35. Plaintiff was transferred to Shawangunk Corr. Fac., on 9/17/2017, at 10:00 PM. Plaintiff was being video recorded during the entire transfer and stated that he was set up and assaulted by officers at Sing Sing Corr. Fac.

36. Plaintiff was examined upon arrival to Shawangunk Corr. Fac., by a nurse in intake, plaintiff told the intake nurse about the assault by the officers in Sing Sing Corr. Fac.

37. Plaintiff was sent to the special housing unit because of the fabricated misbehavior report from Sing Sing Corr. Fac.

38. Plaintiff was sent to the prison infirmary on a stretcher because of the pain and he could not move, this was also recorded, this was on 9/19/2017 in the A.M.

39. Plaintiff was examined by Defendant Doctor Lee, and was giving a walker and pain medication and put on bed rest in the infirmary.

40. Plaintiff was giving an anama, which was a tube filled with a liquid, that had to be squeezed up plaintiff's rectum, so he could use the bathroom. This happend three times by a female nurse. Plaintiff had to take a powder substance twice a day, so he could use the bathroom, because of the pain.

41. Plaintiff wrote to sick call because he was still in great pain. Plaintiff's left upper thigh started to go numb and sharp pains in his lower back.

42. Plaintiff told Doctor Lee that he could not sleep and the pain made him sweat, plaintiff told the Doctor that the pain medication was not working.

43. Plaintiff was giving an x-ray that came back negative.

44. Plaintiff was transferred to albany medical hospital for a nerve function test on 10/31/2017, because plaintiff was still complaining about the pain.

45. Plaintiff requested a MRI because Plaintiff's condition became worse.

46. Plaintiff continued to complain through sick call and wrote another grievance about his medical condition. Plaintiff complained about the

pain in his back and left upper thigh.

47. Plaintiff was examined again because a lump had developed in his upper left thigh, which was in great pain.

48. Doctor Lee stated to plaintiff that the muscle in his left upper thigh started to deteriate because it did not heal correct and the only way to fix it was through surgery.

49. Plaintiff requested for a MRI and physical therapy because his condition did not improve.

50. Plaintiff was then giving a medical shower pass.

51. Plaintiff filed another sick call and told Doctor Lee the he could not walk properly and that he was in alot of pain.

52. Plaintiff's lump in his left leg became even bigger and more painful, after geting off the walker.

53. Defendant Doctor Lee stated to plaintiff that the reason he is not giving plaintiff any more medical treatment was because plaintiff wrote him up in a grievance.

54. Plaintiff was giving a misbehavior report on 10/10/2019 from the alleged incident that allegedly took place on 9/17/2019.

55. Commissioner Hearing officer A. Polizzi conducted the prison disciplinary hearing.

56. Plaintiff was charged with, 104.11 Violent conduct, 100.10 assault on inmate, 106.10 Director order, 100.11 assault on staff, 100.13 fighting, 116.10 Damage property, 104.11 violent conduct, 113.10 weapon.

57. Plaintiff plead not guilty to all charges.

58. Plaintiff submitted into evidence of an official document that was taken during buisness hours, which was the A.M. go around sheet that was taken on the day and time in question.

58. Plaintiff was marked down as being in his cell, which supported plaintiff's defense that he was set up out of retaliation because of a grievance plaintiff tried to file and a misbehavior report that was dismissed on 9/15/2017.

59. Plaintiff requested documentary evidence of the facility operation menual go around from Sing Sing corr. fac., because V. King stated that they do another go around in the AM besides the one she did.

60. The facility operation menual of the "go around" would have stated that they only do one go around list in the AM and all go arounds are final.

61. The facility operation menual would also state that all the go arounds that are conducted, which are, AM, PM, and EVE.

62. Plaintiff retrieved an AM and PM go around sheet from his tier assistance.

63. This exculpatory evidence clearly showed plaintiff was in his cell and not in the mess hall.

64. A. Polizzi denied the plaintiff requested documentary evidence which was the facility operation menual of the Sing Sing go around sheet.

65. Plaintiff was found guilty of all charges on 12/13/2017.

66. Plaintiff was giving 545 days in the special housing unit, by Defendant A. Polizzi.

67. Plaintiff spent 545 days in the special housing unit.

68. Plaintiff was in the box from 9/17/2017 to 3/5/2019.

69. While in the infermery at Shawangunk corr. fac., plaintiff's wife came to visit.

70. Captin Micheal Bectone stated to the plaintiff before he whent to the visit, "You like grieving my staff, you will not be provided with your walker to the visit."

71. Plaintiff was in great pain, plaintiff was being video recorded on the way to the visit room. Plaintiff stated to the video camera that he was being denied his walker, which was not even approved by a doctor.

72. It took plaintiff about 30 minutes to reach his visit because of the pain.

73. Plaintiff appealed to D. Venettozzi, the Director of special housing who affirmed the prison diciplinary charges from 9/17/2017.

74. Plaintiff was then transferred to Southport special housing unit on 11/10/2018

75. Plaintiff was still in alot of pain, plaintiff spoke to the intake nurse Defendant "Jane Doe" about his medical problems.

76. Plaintiff informed nurse "Jane Doe" that he was in pain and that he was giving a medical shower pass by a doctor.

77. Plaintiff told and showed the nurse "Jane Doe" that he could not walk properly and that he was in pain.

78. Plaintiff showed nurse "Jane Doe" the big lump pertruding from his left uper thigh.

79. Nurse "Jane Doe" looked into plaintiffs medical file and then stated to plaintiff "You do have a medical shower pass, but disregarded the medical file".

80. Plaintiff told the nurse "Jane Doe" that he was beat and set up by officers at Sing Sing Corr. Fac.

81. Nurse "Jane Doe" then told plaintiff that she is not going to give plaintiff his medical showers despite his medical records and plaintiff's large lump.

82. Plaintiff was forced to take regular showers despite his medical records show that a doctor gave plaintiff a shower medical pass.

83. Plaintiff filed a grievance about not receiving medical showers.

84. Plaintiff gave his grievance to a unidentified officers.

85. Plaintiff was transferred to five points Corr. Fac., because he was suicidal because of the pain in his leg and back.

86. Plaintiff was then transferred back to South Port after geting off suicide wacth.

87. Plaintiff complained about not geting his medical shower pass because he feel in the shower and was in great pain. Nurse "Jane Doe" continued to denie plaintiff his medical showers.

88. Plaintiff was then transferred to Mid-state box.

89. Plaintiff filed a sick call slip at Mid-state corr. fac. in the box about the pain in his left leg and lower back.

90. Plaintiff was seen by nurse A. Ferguson because of the sick call slip that was sent to medical.

91. Plaintiff informed nurse A. Ferguson about his medical issues. Plaintiff told nurse Ferguson that he was assaulted by officers in Sing Sing and sustained serious injuries.

92. Plaintiff told nurse Ferguson that he was in great pain and that he was supposed to be geting medical showers.

93. Plaintiff showed nurse Ferguson the lump in his left uper thigh and requested to see a doctor.

94. Plaintiff stated to nurse Ferguson that the pain medication he was taking does not work and that he could not sleep because of the ongoing pain.

95. Nurse Ferguson stated that she does not care about my medical problems and then walked.

96. Plaintiff filed a grievance about not seeing the Doctor and nurse Ferguson not putting the plaintiff into see a doctor.

97. Plaintiff was denied medical attention after his MRI came back positive for injury to plaintiff upper left leg which revealed enternal bleeding from a secondary tear.

98. Plaintiff told Doctor Monnova that he was in great pain. Plaintiff requested that he get physical therapy and a medical shower pass and a flats pass because walking up stairs made plaintiffs leg go numb and hurt even more.

99. Doctor Monnova told plaintiff that he was not going to provide plaintiff with any medical attention because plaintiff wrote a grievance on him.

100. Plaintiff told Doctor monnova that he could not sleep because of the pain and that plaintiff needed a MRI for his lower back. Doctor Monnova became very hostile towards plaintiff and refused to listen to plaintiff's medical issues.

101. Plaintiff could not walk up stright or stand up more than one minute while taking a shower. Plaintiff told Doctor monnova, which he denied plaintiff further medical attention.

102. Plaintiff was denied medical attention by Doctor D'Amico, plaintiff was giving pt physical therapy for a month.

103. Plaintiff told Doctor A'mico that he was still in pain.

104. Plaintiff told Doctor D'Amico that he could not sleep and that his leg go numb and that plaintiff was requesting for another MRI for his lower back.

105. Plaintiff also told Doctor D'amico that the physical therapy was not working because he was still in great pain. Doctor D'Amico took another look at plaintiff's leg and stated the the plaintiff's muscle started to deteriorate.

## 5). EXHAUSTION OF LEGAL REMEDIES

106. The plaintiff has exhausted his administrative remedies with respect to all claims and defendants.

## 6). LEGAL CLAIMS

107. Plaintiff realleges and incorporate by reference paragraphs 1-106

108. The actions of A. Polizzi in refusing to retrieve requested documentary evidence of the policies and procedures of the Sing Sing go around Sheet no evidence to support the charges and P. Venettozzi in upholding the disciplinary decision in violation of the Fourteenth Amendment to the U.S. Constitution.

109. The action of captin Micheal Bertone by refusing plaintiff his walker to a visit constituted deliberat indiffernce to the plaintiff medical needs, in violation of the eight Amendment to the U.S. Constitution

110. The action of Doctor "Jhon" Lee to not send plaintiff out to get a MRI for his left uper thigh and low back and Failure to provide physical therapy, constituted deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment to the US constitution.

111. The action of the intake nurse "Jane Doe" from Southport corr. fac., to not provide plaintiff with a flats pass, shower medical pass and put plaintiff into see the Doctor, constitute deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment to the U.S. Constitution.

112. The actions of nurse A. Ferguson in refusing to provide medical attention, constituted deliberate indifference to the plaintiff serious medical needs in violation of the Eighth Amendment to the U.S. Constitution.

113. The action of Doctor V. Monnova in refusing to order a physical therapy, medical shower pass, medical flats pass and delay for MRI on left upper thigh and no MRI for lower back, constituted deliberate indifference to the plaintiffs serious medical needs in violation of the Eighth Amendment to the U.S. Constitution.

114. The actions of Doctor Richard D'Amico to not follow up on medical treatment after a 2nd MRI came back positive, not sending plaintiff out to see a specialist, not ordering a medical shower pass, flats pass, constituted deliberate indifference to the plaintiffs serious medical need in violation of the Eighth Amendment to the U.S. Constitution.

## 7). PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this court enter judgment granting plaintiff:

115. A declaration that the acts and omissions described herein violated plaintiffs rights under the constitution and laws of the U.S.

116. Compensatory damages in the amount of $20,000 against each Defendant, jointly and serverally.

117. Punitive damages in the amount of $40,000 against each defendant.

118. A jury trial on all issues triable by jury.

119. Plaintiff's costs in this suit and lawyer fees

# VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Upstate Corr. Fac.
P.O. Box 2000
Malone, NY 12953

Date: 1/17/2021

Sig: *Thomas Jackson*
Thomas Jackson