UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS JACKSON,

                              Plaintiff,

      v.                                                     9:20-CV-1092
                                                             (BKS/ATB)

CAPTAIN BERTONE, et al.,

                              Defendants.
_____

APPEARANCES:

THOMAS JACKSON
Plaintiff, Pro Se
12-A-3039
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

BRENDA K. SANNES
United States District Judge

**DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff Thomas Jackson commenced this action in the Southern District of New York by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application for leave to proceed in forma pauperis ("IFP"). Dkt. No. 2 ("Compl."); Dkt. No. 1 ("IFP Application").[1] By Decision and Order filed on October 30, 2020,

---

[1] Plaintiff's initial filings also included a motion for a temporary restraining order and preliminary injunction. *See* Dkt. No. 3 ("Motion for Injunctive Relief"). By Order entered on August 27, 2020, the Honorable Colleen McMahon of the Southern District of New York granted plaintiff's IFP Application. Dkt. No.

and following review, pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), of the portions of the complaint transferred to this District from the Southern District of New York, some of plaintiff's claims and some of the named defendants were dismissed, and service and a response was directed for the claims against Corrections Captain Bertone that survived sua sponte review.  Dkt. No. 12 ("October 2020 Order").

Presently before the Court is plaintiff's amended complaint.  Dkt. No. 20 ("Am. Compl.").[2]

## II.    DISCUSSION

### A.    The Complaint and October 2020 Order

In his original complaint, plaintiff asserted claims based on alleged wrongdoing that occurred while he was incarcerated in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Sing Sing, Shawangunk, Mid-State, Southport, and Clinton Correctional Facilities.  *See generally* Compl.

This Court construed the complaint to assert the following claims based on alleged

---

7. Thereafter, the case was reassigned to the Honorable Cathy Seibel of the Southern District of New York.  By Order entered on September 4, 2020, Judge Seibel severed plaintiff's claims arising at Sing Sing Correctional Facility from his claims arising at Shawangunk, Mid-State, Southport, and Clinton Correctional Facilities, ordered that plaintiff's claims arising at Shawangunk, Mid-State, Southport, and Clinton Correctional Facilities be transferred to the Northern District of New York, and denied the Motion for Injunctive Relief without prejudice.  *See* Dkt. No. 9 ("September 2020 Order").  On September 14, 2020, plaintiff's case was transferred in part to this District from the Southern District of New York.  Dkt. No. 11.

[2] Before plaintiff filed his amended complaint, he filed a letter request for an extension of time to submit an "amend motion."  Dkt. No. 18.  By Order entered on December 9, 2020, the Honorable Andrew T. Baxter advised plaintiff that he could file a proper motion to amend and/or supplement, together with a complete, proposed amended/supplemental complaint, on or before January 25, 2021.  Dkt. No. 19.  Judge Baxter also stayed defendant Bertone's deadline to respond to the surviving claims pending plaintiff's submission of a motion to amend or the expiration of his deadline to do so.  *Id*.  Although plaintiff's submission of his amended complaint does not technically comply with Judge Baxter's Order, for the sake of efficiency, the Court will nonetheless review the pleading in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

wrongdoing that occurred at Shawangunk, Mid-State, Southport, and Clinton Correctional Facilities: (1) a First Amendment retaliation claim against defendant Bertone; (2) Eighth Amendment medical indifference claims against defendants Dr. Lee, Bertone, Southport Nurse Jane Doe, Nurse Ferguson, Dr. Monnava, and Dr. D'Amico; (3) a Fourteenth Amendment due process claim against defendant Corrections Lieutenant Connors based on his inadequate investigation of an incident; and (4) Fourteenth Amendment disciplinary due process claims against defendants Polizzi, Lamanna, and Venettozzi. *See* October 2020 Order at 9-10.

After reviewing the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court found that plaintiff's First Amendment retaliation claim and Eighth Amendment medical indifference claim against defendant Bertone survived sua sponte review and required a response. *See* October 2020 Order at 29. Plaintiff's Section 1983 claims for monetary relief against the defendants in their official capacities were dismissed with prejudice, and his remaining claims were dismissed without prejudice for failure to state a claim upon which relief may be granted. *Id.* at 29-30.

### B.     Overview of the Amended Complaint

Plaintiff's amended complaint re-asserts each of the claims contained in the original complaint against defendants Lee, Bertone, Southport Nurse Jane Doe, Nurse Ferguson, Dr. Monnava, Dr. D'Amico, Polizzi, and Venettozzi, asserts new First Amendment retaliation claims against defendants Lee and Monnava, and no longer asserts claims against Lamanna and Connors. *See generally*, Am. Compl. The allegations in the amended complaint are largely similar to the allegations in the original complaint with regard to the re-asserted

3

claims, albeit more detailed in certain respects and less detailed in other respects. *Compare* Am. Compl. *with* Compl. The following facts related to plaintiff's claims against defendants Dr. Lee, Southport Nurse Jane Doe, Nurse Ferguson, Dr. Monnava, Dr. D'Amico, Polizzi, and Venettozzi are set forth as alleged in the amended complaint.[3]

### 1. Allegations Related to Medical Claims

On the evening of September 17, 2017, plaintiff arrived at Shawangunk Correctional Facility from Sing Sing Correctional Facility ("Sing Sing C.F."). Am. Compl. at 5. Upon arriving at the facility, plaintiff was examined by a nurse as part of intake. *Id.* Plaintiff advised the nurse that he was assaulted by corrections officers at Sing Sing C.F. earlier in the day. *Id.* Thereafter, plaintiff was sent to the special housing unit ("SHU") as a result of a misbehavior report issued by officials from Sing Sing C.F. *Id.*

On the morning of September 19, 2017, plaintiff was "sent to the prison infirmary on a strecher [sic] because of [his] pain" and inability to move. Am. Compl. at 5. When plaintiff arrived at the infirmary, he was evaluated by defendant Doctor Lee, who prescribed him a walker and pain medication, and placed him on bed rest in the infirmary. *Id.*

On three unidentified occasions thereafter, plaintiff was administered an enema, and separately forced to consume "a poweder [sic] substance" twice a day for a period of time "so he could use the bathroom[.]" Am. Compl. at 5. Apparently following plaintiff's release from bed rest, he "wrote to sick call because he was still in great pain." *Id.* Thereafter, plaintiff told defendant Lee that he could not sleep, and the prescribed pain medication made him sweat and "was not working." *Id.*

---

[3] Plaintiff's allegations of wrongdoing by defendant Bertone are materially similar to the allegations set forth in the original complaint and will therefore not be recited herein. *Compare* Compl. *with* Am. Compl.

4

Following plaintiff's complaints, he was "giv[en] an x-ray[,]" which "came back negative." Am. Compl. at 5. Plaintiff was then transferred to an outside hospital for "a nerve function test" on October 31, 2017. *Id.*

Plaintiff "continued to complain" about his state of pain "through sick call[,]" and "wrote another grievance about his medical condition." Am. Compl. at 5. Following these complaints, plaintiff was "examined again" by defendant Lee due to a developing lump on his upper left thigh. *Id.* at 5-6. Defendant Lee advised plaintiff that the muscle in his upper left thigh did not heal correctly and had started to deteriorate. *Id.* at 6. Defendant Lee further advised plaintiff that only surgery could fix the issue. *Id.* Plaintiff requested a magnetic resonance imaging ("MRI") scan and physical therapy, but was instead given a medical shower pass. *Id.*

At some point after this exchange, plaintiff filed another sick call request and was again seen by defendant Lee. Am. Compl. at 6. Plaintiff advised defendant Lee that the lump on his left leg was growing and becoming more painful. *Id.* In response, defendant Lee stated that plaintiff would not receive further medical treatment because plaintiff "wrote him up in a grievance." *Id.*

On January 10, 2018, plaintiff was transferred to Southport Correctional Facility. Am. Compl. at 8; Compl. at 12.[4] At the time of plaintiff's transfer, he "was still in a lot of pain[.]" Am. Compl. at 8. Plaintiff spoke to the intake nurse, defendant Jane Doe (hereinafter,

---

[4] The amended complaint identifies the transport date as "11/10/2018." Am. Compl. at 8. However, the original complaint alleged that the transport date was January 10, 2018. Compl. at 12. Moreover, the original complaint alleged wrongdoing that occurred at Mid-State Correctional Facility in and after July, 2018. *Id*. at 14-15. Thus, the Court will assume that the numerical month reference in the amended complaint regarding plaintiff's transfer to Southport Correctional Facility was a typographical error.

5

"Southport Nurse Jane Doe"), about his "medical problems" and informed her that he was in pain and had been given a medical shower pass by defendant Lee. *Id.* Plaintiff also "told and showed" defendant Southport Nurse Jane Doe that he could not walk properly, and showed her "the big lump pertruding [sic] from his left up[p]er thigh." *Id.* Defendant Southport Nurse Jane Doe then reviewed plaintiff's medical file, acknowledged that he had been prescribed a medical pass, and then advised that she would not issue him one. *Id.*

Plaintiff filed a grievance about not receiving a medical shower pass. Am. Compl. at 9. Thereafter, plaintiff was transferred to Five Points Correctional Facility "because he was suicidal[.]" *Id.* After "get[t]ing off suicide watch[,]" plaintiff was transferred back to Southport Correctional Facility. *Id.*

Upon plaintiff's return to Southport Correctional Facility, he "complained about not get[t]ing [a] medical shower pass" after falling in the shower. Am. Compl. at 9. Nonetheless, defendant Southport Nurse Jane Doe continued to deny plaintiff "medical showers." *Id.*

At some point, plaintiff was transferred to Mid-State Correctional Facility. Am. Compl. at 9.[5] Thereafter, plaintiff filed a sick call request "about the pain in his left leg and lower back" and was subsequently seen by defendant Nurse Ferguson. *Id.* Plaintiff showed defendant Ferguson the lump on his thigh, told her that he was "in great pain" and "supposed to be get[t]ing medical showers[,]" and requested to see a doctor. *Id.* Plaintiff also advised defendant Ferguson that the pain medication prescribed to him was not working, and that as a result, he was unable to sleep. *Id.* In response, defendant Ferguson stated that she "does not care about [his] medical problems" and walked away. *Id.* at 10.

---

[5] The original complaint indicates that plaintiff was transferred to Mid-State Correctional Facility sometime before July 31, 2018. Compl. at 14-15.

6

Plaintiff filed a grievance regarding defendant Ferguson's refusal to grant his request to see a doctor. Am. Compl. at 10. Thereafter, plaintiff received an MRI, which revealed "enternal [sic] bleeding from a secondary tear" to plaintiff's "up[p]er left leg." *Id.* Despite the results of the scan, plaintiff "was denied medical attention[.]" *Id.*

At some point, plaintiff was examined by defendant Doctor Monnava. Am. Compl. at 10. Plaintiff advised defendant Monnava that he was "in great pain" and requested physical therapy, a medical shower pass, and a flats pass because "walking up stairs made [his] legs go numb" and increased his feeling of pain. *Id.* Defendant Monnava told plaintiff that he was not going to provide him with "any medical attention" because plaintiff "wrote a grievance on him." *Id.*

At some point thereafter, plaintiff was seen by defendant Doctor D'Amico, who prescribed plaintiff one month of physical therapy. Am. Compl. at 10. At the end of plaintiff's physical therapy treatment, he advised defendant D'Amico that he was "still in pain[,]" could not sleep, and was experiencing numbness in his left leg. *Id.* Plaintiff requested another MRI for his lower back. *Id.* Defendant D'Amico "took another look at plaintiff['s] leg and stated [that his] muscle [had] started to deteriate [sic]." *Id.* at 11. Defendant D'Amico never sent plaintiff to see a specialist, or ordered him a medical shower pass or flats pass. *Id.* at 12.

### 2. Allegations Related to Disciplinary Claims

On October 10, 2017, plaintiff was issued a misbehavior report charging him with violent conduct, assault on inmate, assault on staff, fighting, property damage, and refusing a direct order. Am. Compl. at 6. Plaintiff received a disciplinary hearing for the charges in

the misbehavior report, which was conducted by defendant Hearing Officer Polizzi. *Id*.

During the disciplinary hearing, plaintiff plead not guilty to the charges and "submitted into evidence . . . the A.M. Go Around Sheet" prepared at Sing Sing C.F. on "the day and time in question." Am. Compl. at 6. The "Go Around Sheet" proved that plaintiff "was in his cell and not in the mess hall" as charged in the misbehavior report. *Id.* at 7.

Plaintiff requested that the Sing Sing C.F. Operation Manual be introduced into evidence to discredit the claim made by one of the officials who testified against him that officials at that facility "do another go around in the A.M." after the "Go Around Sheet" is prepared. Am. Compl. at 7. Defendant Polizzi denied plaintiff's document request, and on December 13, 2017, found him guilty of all charges in the misbehavior report. *Id.* Defendant Polizzi sentenced plaintiff to 545 days of confinement in the SHU. *Id.*

Plaintiff appealed defendant Polizzi's disciplinary determination to defendant Venettozzi, who affirmed the determination and sentence. Am. Compl. at 8. As a result, plaintiff was confined in a SHU cell from September 17, 2017, until March 5, 2019. *Id.*

### 3. Plaintiff's Claims

Liberally construed, the amended complaint asserts the following claims against the aforementioned defendants in their individual capacities: (1) First Amendment retaliation claims against defendants Dr. Lee, Bertone, and Dr. Monnava; (2) Eighth Amendment medical indifference claims against defendants Dr. Lee, Bertone, Southport Nurse Jane Doe, Nurse Ferguson, Dr. Monnava, and Dr. D'Amico; and (3) Fourteenth Amendment disciplinary due process claims against defendants Polizzi and Venettozzi.

Plaintiff seeks monetary relief. Am. Compl. at 12. For a more complete statement of

plaintiff's claims, reference is made to the amended complaint.

**C.     Analysis**

Because plaintiff is proceeding in forma pauperis and is an inmate suing government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the October 2020 Order, and will not be restated in this Decision and Order. *See* October 2020 Order at 2-4.[6]

### 1. Re-Asserted Claims that Previously Survived Sua Sponte Review

As noted, plaintiff's First Amendment retaliation claim and Eighth Amendment medical indifference claim against defendant Bertone survived the Court's review of the original complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). *See* October 2020 Order at 29. The allegations in the amended complaint are not materially different from the allegations in the original complaint with respect to these claims. Accordingly, and for the reasons set forth in the October 2020 Order, these claims once again survive initial review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 2. Re-Asserted Medical Indifference Claims Dismissed in the October 2020 Order

The amended complaint re-asserts Eighth Amendment medical indifference claims against defendants Dr. Lee, Southport Nurse Jane Doe, Nurse Ferguson, Dr. Monnava, and

---

[6] The Clerk is directed to provide plaintiff with another copy of the October 2020 Order for his records.

9

Dr. D'Amico, which were dismissed without prejudice in the October 2020 Order. The legal standard governing these claims was discussed at length in the October 2020 Order, and will not be restated in this Decision and Order. *See* October 2020 Order at 14-17.

At this stage of the proceeding, and mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed,[7] plaintiff's medical indifference claims against defendants Dr. Lee, Southport Nurse Jane Doe, Nurse Ferguson, and Dr. Monnava survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to defendant Dr. D'Amico. Even assuming the allegations in the amended complaint are sufficient to satisfy the objective component of plaintiff's claim, as with the original complaint, plaintiff has failed to allege any facts which plausibly suggest that defendant D'Amico denied him treatment out of deliberate indifference to his serious medical needs. To the contrary, plaintiff alleges that defendant D'Amico prescribed him a month of physical therapy after initially evaluating him. Am. Compl. at 10. Moreover, while plaintiff alleges that he advised defendant D'Amico at the conclusion of his physical therapy treatment that he remained in pain and had difficulty with sleeping and numbness in his leg, the amended complaint is devoid of any allegations which plausibly suggest that defendant D'Amico refused to provide any further treatment after plaintiff's physical therapy concluded. Indeed, it is entirely unclear from the allegations in the amended complaint when plaintiff's physical therapy began and ended, what treatment, if any, plaintiff sought (and received) thereafter, or how his condition changed, if at all.

---

[7] *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Furthermore, insofar as plaintiff's Eighth Amendment claim against defendant D'Amico is based on this official's alleged failure to refer plaintiff to a specialist or order him a medical pass, defendant D'Amico's failure to eliminate plaintiff's discomfort, or prescribe him the exact treatment he desired, does not, without more, plausibly suggest deliberate indifference to plaintiff's medical condition. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("[T]he Eighth Amendment is not a vehicle for bringing medical malpractice claims. . . ."); *Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000) ("We agree that the mere malpractice of medicine in prison does not amount to an Eighth Amendment violation. . . . This principle may cover a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady."); *Burgess v. County of Rensselaer*, No. 03-CV-0652 (NPM/RFT), 2006 WL 3729750, at *8 (N.D.N.Y. Dec. 18, 2006) (holding that "claim[s] of misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, [are] not cognizable under section 1983"); *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)); *Clark v. Swain*, No. 08-CV-0637, 2011 WL 6938458, at *3 (W.D.N.Y. Oct. 12, 2011), *report and recommendation adopted sub nom*. *Clark v. Lay*, 2012

11

WL 11128 (W.D.N.Y. Jan. 3, 2012) ("That [defendant's] initial examination did not diagnose plaintiff's injury as a ruptured achilles tendon or cause her to refer plaintiff for immediate transfer to a hospital, is insufficient, without more, to satisfy the subjective element of a claim of deliberate indifference to a serious medical need.").

Accordingly, and for the reasons set forth in the October 2020 Order, plaintiff's Eighth Amendment medical indifference claim against defendant D'Amico is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See* October 2020 Order at 23-24.

### 3. Re-Asserted Disciplinary Due Process Claims Dismissed in the October 2020 Order

The amended complaint re-asserts Fourteenth Amendment disciplinary due process claims against defendants Polizzi and Venettozzi, which were dismissed without prejudice in the October 2020 Order. The legal standard governing these claims was discussed at length in the October 2020 Order, and will not be restated in this Decision and Order. *See* October 2020 Order at 26-27.

At this stage of the proceeding, and mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, plaintiff's disciplinary due process claims against defendants Polizzi and Venettozzi survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 4. New Retaliation Claims

The legal standard governing First Amendment retaliation claims was discussed at length in the October 2020 Order, and will not be restated in this Decision and Order. *See*

October 2020 Order at 13-14.

At this stage of the proceeding, and mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, plaintiff's retaliation claims against defendants Lee and Monnava survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

## III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint is accepted for filing and is the operative pleading; and it is further

**ORDERED** that the following claims **SURVIVE** sua sponte review and require a response: (1) plaintiff's First Amendment retaliation claims against defendants Dr. Lee, Bertone, and Dr. Monnava; (2) plaintiff's Eighth Amendment medical indifference claims against defendants Dr. Lee, Bertone, Southport Nurse Jane Doe, Nurse Ferguson, and Dr. Monnava; and (3) plaintiff's Fourteenth Amendment disciplinary due process claims against defendants Polizzi and Venettozzi; and it is further

**ORDERED** that all remaining Section 1983 claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service on defendants Dr. Lee, Nurse Ferguson,

Dr. Monnava, Polizzi, and Venettozzi;[8] and it is further

**ORDERED** that upon the completion of service on defendants Dr. Lee, Nurse Ferguson, Dr. Monnava, Polizzi, and Venettozzi, a response to plaintiff's amended complaint be filed by these defendants and defendant Bertone, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that plaintiff must take reasonable steps to ascertain the identity of the "Doe" defendant remaining in this action through discovery, and when identified, seek to amend the amended complaint to add this individual as a defendant in this action pursuant to Federal Rule of Civil Procedure 15(a).  Plaintiff's failure to timely serve this defendant will result in her termination from the action and dismissal of the claims asserted against her; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in**

---

[8] Because Nicholas Luke Zapp, on behalf of the Office of the New York State Attorney General, has appeared in this action as counsel for defendant Bertone, the Clerk need not issue a summons for this defendant.

**the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff, together with a copy of the October 2020 Order (Dkt. No. 12).

**IT IS SO ORDERED.**

Dated: March 30, 2021
       Syracuse, NY

*/s/ Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge